[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS
In this matter, the plaintiff, a business brokerage firm, seeks to recover a commission claimed to be due from the defendants.
The plaintiff had entered into an exclusive sales contract with the defendants Mitchell and Conklin, under the terms of which he was to receive a commission of $15,000 if he procured a buyer for their computer business, Elite Computer Group. The plaintiff then introduced the defendant Computer Control Corporation (CCC) to Mitchell and Conklin and these parties met and had discussions about a purchase and sale.
Subsequently, Mitchell and Conklin went to work for CCC and at least four of their customers became customers of CCC.
The plaintiff claims that these defendants conspired to avoid paying the commission due for the "sale" of the business, while the defendants argue that there was no "sale", but only the employment of Mitchell and Conklin by CCC.
The matter was tried to the court and upon the conclusion of the plaintiff's case, the defendants moved for a dismissal, arguing that the plaintiff had not made out a prima facie case.
The court reserved decision on the motions, noting that Exhibits E, F, G, H I purporting to show the amount of business CCC did with four former customers of Mitchell and Conklin had no totals and as submitted were undecipherable by the court. It was also noted that at this stage of the trial, the court had no evidence as to the significance of these business transactions to CCC's operations. The plaintiff was given an opportunity to submit the business totals to the court, subject to CCC's agreement as to the accuracy.
This has been done and the figures have been considered by CT Page 113 the court in reaching this decision. Counsel for the plaintiff has requested an opportunity for additional oral agreement. This request is denied.
 DISCUSSION I
According to the "Broker Agreement" between the plaintiff and Mitchell and Conklin, Exhibit A, "Sell" is defined as "Sell, exchange, lease, manage, otherwise dispose of."
The subject of the "sale" was the business of Mitchell 
Conklin, "Elite Computer Group," and its assets as somewhat inexactly checked off on Exhibit A.
The sales price called for is $125,000, though the value ascribed to "assets" is only $10,000, and this is for "inventory at cost."
The plaintiff must establish that these defendants transferred the assets of Elite to CCC.
 A.
The plaintiff called two employees of firms which had dealt with Elite and switched to CCC. In both cases, CCC's president was introduced to them either by Conklin or both Mitchell and Conklin. In both instances, CCC replaced Elite. This was not disputed by the defendants who argue this was consistent with and natural in view of CCC's employing Mitchell and Conklin.
The testimony of Gary Shure, president of the plaintiff corporation is significant in that he claims to have told Mitchell that Elite was struggling and that he and Conklin should sell out and go to work for their buyer. He also claims to have told Mitchell this would entitle the plaintiff to its commission.
The plaintiff also called Joel Scott, president of CCC. He stated that Elite was worth nothing and denied making any purchase of Elite's assets. As to Elite customers, he claimed to be aware of only the four listed on Exhibits E-I. He stated the Elite inventory was virtually worthless and that the bulk of its customers were small personal computer accounts. The customer list was also outdated and Elite had few current customers. CT Page 114
Confronted with Exhibit C, an offer from CCC to Mitchell and Conklin to "merge" the businesses, Mr. Scott said this proposal was rejected by Mitchell Conklin. This "offer" cannot be properly evaluated since it lacks an attachment which contained "a compensation and bonus plan."
The plaintiff also called Mario Ciampi, a CPA and accountant for CCC. He testified that he found little or no value to Elite, knows of no purchase by CCC, and the corporate books reflects no expenditure to acquire Elite and no assets added from Elite.
It is the conclusion of the court that the plaintiff has not met its burden to establish that a sale took place. In light of the unrefuted evidence from Mr. Scott and Mr. Ciampi, the court cannot provide the missing elements to conclude the defendants engaged in a subterfuge.
 B.
As noted above, the court reserved decision on defendant's motion to dismiss, permitting the plaintiff to submit the account totals in Exhibits E-I. The court at that time stated that the plaintiff had made no showing as to the impact of this business on CCC.
Upon reflection, the court was in error in reserving decision, because it had just stated what was a defect in the plaintiff's proof and should have granted the motions forthwith.
This absence of evidence is of significance for two reasons:
1. It lends no support to the claim a sale occurred.
2. Had these four accounts produced substantial revenues, which generously benefitted [benefited] CCC an inference in favor of a sell might have been created.
 C.
This is a complaint in four counts, count three alleging fraud on the part of all defendants and count four alleging a CUTPA violation as to all defendants.
By virtue of the court's finding that no sale was CT Page 115 consummated, these two counts must also fail.
 CONCLUSION
Judgment may enter dismissing the plaintiff's case on all counts as to all defendants.
Anthony V. DeMayo Judge Trial Referee